UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CARLOS PONCE,<br><br>Plaintiff,<br><br>vs.<br><br>DR. S. MOATS, in his individual capacity; K. PAVEL, in her individual capacity; and M. ZAVADIL, in her individual capacity;<br><br>Defendants. | 4:25-CV-04238-CCT<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING** |

Plaintiff, Carlos Ponce, who was previously an inmate at the Yankton Federal Prison Camp,[1] filed a pro se civil rights lawsuit. Docket 1. Ponce moves for leave to proceed in forma pauperis and provided his prisoner trust account report. Dockets 2, 3.

## I.   Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the

---

[1] Ponce filed a notice of address change and stated that his current address is in Grand Island, Nebraska. Docket 6. But the Bureau of Prisons' website reveals that Ponce remains in the custody of the Bureau of Prisons and is now housed at a residential reentry facility. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 10, 2026).

entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1). Ponce's certified prisoner trust account report shows a current balance of $14.27. Docket 3 at 1. Based on this information, the Court grants Ponce's motion for leave to proceed in forma pauperis, Docket 2, and waives his initial partial filing fee because his initial partial filing would exceed his current balance. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Ponce must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the

prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Ponce's current institution.[2] Ponce remains responsible for the entire $350 filing fee as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background Alleged by Ponce

At all relevant times, Ponce was in custody of the Bureau of Prisons (BOP) and housed at the Yankton Federal Prison Camp (FPC). Docket 1 at 9, ¶ 3. Defendant Dr. S. Moats is a medical doctor employed by the BOP at FPC Yankton. *Id.* ¶ 4. Defendants K. Pavel and M. Zavadil are medical staff members employed by the BOP at FPC Yankton. *Id.* at 10, ¶¶ 5, 6. Ponce sues the defendants in their individual capacities. *Id.* at 9, 10, ¶¶ 4, 5, 6.

On July 9, 2025, Ponce slipped on water-covered stairs in the gym at FPC Yankton. *Id.* at 10, ¶ 7. Ponce alleges that the "felt and heard his [ankle] bone break and immediately informed medical staff of his belief that the bone was fractured." *Id.* Ponce was transported by golf cart to the FPC Yankton medical unit. *Id.* ¶ 8. Zavadil examined Ponce, and Dr. Moats diagnosed Ponce

---

[2] "Courts have required agencies—including halfway houses—housing plaintiffs proceeding in forma pauperis to collect installments of initial filing fees when resident plaintiffs were classified as prisoners under the PLRA." *Bear v. Corr. Med. Mgmt., LLC*, 4:23-CV-04127-KES, 2023 WL 9051243, at *2 n.2 (D.S.D. Dec. 29, 2023) (collecting cases).

with a sprained ankle, despite Ponce's reports of "extreme pain and inability to bear weight." *Id.* Dr. Moats prescribed ibuprofen and ice. *Id.* Ponce requested a wheelchair because he could not put pressure on his injured leg. *Id.* ¶ 9. Dr. Moats denied Ponce's request for a wheelchair and directed that he be provided crutches. *Id.* When Ponce reiterated that he was unable to bear weight on his injured leg, Dr. Moats told Ponce that he was "out of bounds" and threatened to issue an incident report if Ponce did not leave the medical unit. *Id.*

The next day, July 10, 2025, Ponce fell in the bathroom of his housing unit due to water on the floor. *Id.* at 11, ¶ 10. Ponce contends that the fall exacerbated his injury. *Id.* After this fall, Ponce went to the medical unit for an x-ray. *Id.* While in the medical unit, Ponce notified Pavel that he had fallen and again requested a wheelchair due to the "wet and hazardous conditions throughout the facility." *Id.* Pavel denied Ponce's request for a wheelchair. *Id.*

While he was en route to speak with a captain, who is not a named defendant, for assistance, Ponce fell on a stairway and injured his shoulder. *Id.* ¶ 11. The captain contacted the medical staff, and the medical staff examined Ponce's shoulder, but again refused to provide a wheelchair. *Id.* ¶ 11. Ponce's complaint does not specify which medical staff member or members examined his shoulder and refused to provide a wheelchair. *See generally id.*

At some point, Ponce was transported to an outside clinic, but the complaint does not allege when this occurred. *Id.* ¶ 12. At the outside clinic, a nurse examined Ponce's leg, advised against bearing any weight on it, and recommended a wheelchair or knee cart. *Id.* The outside clinic doctor noted

that Ponce's leg was red and swollen and advised him to return to the FPC Yankton medical unit if the condition worsened or his pain increased. *Id.* ¶ 14.

When Ponce returned to FPC Yankton, he requested a wheelchair from Pavel, but Dr. Moats instructed Pavel to deny the request. *Id.* Therefore, Ponce was forced to walk across the entire prison campus to his housing unit without assistance. *Id.*

Shortly thereafter, however, Ponce was provided with a wheelchair. *Id.* ¶ 13. While waiting for the wheelchair in the lobby of the medical unit, Ponce contends that Zavadil approached him using profanity and threatened him. *Id.* Ponce contends that similarly situated inmates at FPC Yankton with suspected fractures or mobility impairments were "provided wheelchairs without delay[.]" *Id.* at 12, ¶ 17.

On September 2, 2025, another provider examined Ponce and concluded that his leg was infected. *Id.* ¶ 15. This provider prescribed antibiotics, which were administered the same day they were prescribed. *Id.*

As relief, Ponce seeks compensatory and punitive damages from each in the amount of $5,000,000 for physical injury, pain and suffering, emotional distress, and medical expenses, as well as costs and reasonable attorney's fees, if applicable. *Id.* at 15.

### B.    Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally

construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28

U.S.C. § 1915A(b). This Court will now assess Ponce's claims under 28 U.S.C. § 1915A.

### C.     Legal Analysis

Ponce brings this action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) for violation of his rights under the Fifth and Eighth Amendments. Docket 1 at 1, 4, 5. "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). In *Bivens*, the United States Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for entering and searching the plaintiff's apartment and then arresting him, all without a warrant. 403 U.S. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other contexts: a Fifth Amendment equal protection claim under the Due Process clause against a Congressman for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (recognizing that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

7

A *Bivens* remedy is not available for all constitutional violations and expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Id.* at 135 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Eighth Circuit Court of Appeals has adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a *Bivens* remedy, the Court engages in a two-step inquiry. *See Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the Court considers whether Ponce presents a *Bivens* claim in a new context. *Id.* According to the Supreme Court, "new context" is broad, and the Court considers "a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the] Court.'" *Hernandez v. Mesa*, 589 U.S. 92, 102 (2020) (quoting *Ziglar*, 582 U.S. at 139). A case may be meaningfully different:

> [B]ecause of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. If the claim has not been previously recognized as a *Bivens* claim, the Court proceeds to step two. At step two, the Court asks "if there are 'special factors [that] counsel[] hesitation'" before implying a new cause of action "in the absence of affirmative action by Congress." *Id.* at 136

8

(quoting *Carlson*, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. *Id.* at 137; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If a Court has "reason to pause before applying *Bivens* in a new context or to a new class of defendants—[it should] reject the request." *Hernandez*, 589 U.S. at 102.

The Court now applies the two-step inquiry outlined by the Supreme Court to decide whether to extend a *Bivens* remedy to the contexts alleged by Ponce. *See Egbert*, 596 U.S. at 492.

### 1. Count I

In his first cause of action, Ponce alleges that Dr. Moats, Pavel, and Zavadil were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Docket 1 at 12–13, ¶¶ 18–21. Specifically, Ponce contends that defendants misdiagnosed and inadequately treated his leg injury, repeatedly denied him a wheelchair "despite his inability to bear weight, multiple falls, and recommendations from an outside medical provider[,]" and delayed treatment for swelling and infection. *Id.* at 13, ¶¶ 20(a) – (c). Ponce asserts that Zavadil used threats and profanity to intimidate him from seeking necessary medical care. *Id.* at 11, 13, ¶¶ 13, 20(d).

Ponce cites *Carlson v. Green*, 446 U.S. 14 (1980) in support of his first cause of action. *Id.* at 13, ¶ 19. In *Carlson*, the United States Supreme Court recognized a *Bivens* claim brought by an inmate's estate against prison official for failure to provide adequate medical care for the inmate's asthma, purporting causing the inmate's death. 446 U.S. at 16 & n.1, 24. Courts

9

considering Eighth Amendment denial of medical care claims have found that claims present a new *Bivens* context where the medical condition at issue differs from the decedent's condition in *Carlson* in nature or severity. *See, e.g., Adeyola v. Reddy*, 718 F. Supp. 3d 464, 277–78 (E.D.N.C. 2024) (finding a prisoner's Eighth Amendment claim alleging a failure to timely refer the prisoner to outside specialists for treatment of primary progressive multiple sclerosis was meaningfully different from *Carlson* and presented a new context); *Heffley v. Fed. Bureau of Prisons FCI Fort Dix*, No. 17-3647 (NLH) (SAK), 2023 WL 8827451, at *3–4 (D.N.J. Dec. 21, 2023) (holding a prisoner's Eighth Amendment claim alleging the failure to treat an eye injury was meaningfully different from *Carlson* and presented a new context); *Muniz v. United States*, No. 22-0816 (NLH) (MJS), 2023 WL 8469510, at *3–6 (D.N.J. Dec. 7, 2023) (finding a prisoner's Eighth Amendment claim alleging that negligent treatment of diabetes led to the amputation of the prisoner's toe was meaningfully different from *Carlson* and present a new context); *Villegas-Escobar v. Kwon*, No. 22-00087 JMS-WRP, 2023 WL 2574417, at *6 (D. Haw. Mar. 20, 2023) (stating that prisoner's Eighth Amendment claim alleging delayed surgical evaluation and consult due to pain caused by hernia mesh was materially different from *Carlson* and presented a new context); *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *10 (M.D. Pa. Mar. 8, 2023) (finding a prisoner's Eighth Amendment claim alleging inadequate treatment of chronic low back pain was meaningfully different from *Carlson* and presented a

new context because the claim involved a "chronic and non-life-threatening condition.").

Here, Ponce's acute leg injury, which was not life threatening, differs from the decedent's condition in *Carlson* in both nature and severity. An acute orthopedic injury is distinguishable from a chronic, respiratory illness. Further, in *Carlson*, it was apparent to the medical staff that the inmate was experiencing severe, life-threatening symptoms during an asthma attack. *Carlson*, 446 U.S. at 16 n.1. Ponce alleges no facts demonstrating that he presented with any life-threatening symptoms. *See generally* Docket 1.

Finally, in *Carlson*, the lawsuit was initiated by a deceased inmate's estate. *Carlson*, 446 U.S. at 16. Thus, the BOP administrative remedy program, that Ponce alleges he used two times, *see* Docket 1 ¶ 16, was not available to the inmate's estate in *Carlson*. *See Muniz*, 2023 WL 8469510, at *5 (distinguishing *Carlson* from cases where a prisoner did not expire because the "administrative and injunctive relief would have a completely different application" to the claims (citation omitted)). Accordingly, Ponce's Eighth Amendment deliberate indifference to a serious medical need claim presents a new context under *Bivens*.

In this case, there are special factors that counsel against extending *Bivens* to Ponce's Eighth Amendment deliberate indifference claim. First, "[p]risoner civil rights litigation . . . is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners." *Brown v. Cooper,* No. 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11,

11

2018), *report and recommendation adopted by* 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd in relevant part as modified*, 787 F. App'x 366 (8th Cir. 2019) (per curiam). "Congress legislated prisoner litigation through the Prisoner Litigation Reform Act [PLRA] and did not provide a damages claim against federal prison officials. . . . Congress likely would have included such a remedy if it had intended to provide one." *Yarclay v. Averitt*, No. CIV-22-445-G, 2022 WL 20701862, at *4 (W.D. Okla. July 8, 2022) (collecting cases), *report and recommendation adopted by* 2023 WL 6302180 (W.D. Okla. Sep. 27, 2023); *see also Mays v. Smith*, 70 F.4th 198, 206 (4th Cir. 2023) (recognizing that the PLRA "does not provide for a standalone damages remedy against federal jailers[.]" (quoting *Ziglar*, 582 U.S. at 149)).

Second, other remedies exist to address the claims alleged by Ponce. Federal prisoners who allege that their Eighth Amendment rights have been violated may seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (recognizing that federal prisoners "have full access to remedial mechanisms established by the BOP, including suits in federal courts for injunctive relief and grievances filed through the BOP's Administrative Remedy Program[.]"). The availability of alternative remedies is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Hardy v. Bureau of Prisons*, Civ. No. 18-794

12

(DSD/BRT), 2019 WL 3085963, at *3 (D. Minn. June 10, 2019) (quoting *Wilkie*, 551 U.S. at 550), *report and recommendation adopted by* 2019 WL 3080916 (D. Minn. July 15, 2019). "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

Here, Ponce alleges that he filed two administrative remedies with the BOP. Docket 1 ¶ 16. The fact that Ponce did not obtain relief through the administrative process does not mean that the administrative process is not an alternative remedy. *McIntosh v. Gallion*, No. 23-CV-3149 (JRT/ECW), 2024 WL 4278754, at *9 (D. Minn. Aug. 29, 2024), *report and recommendation adopted by* 2024 WL 4278664 (D. Minn. Sep. 24, 2024); *see also Dockery v. Baltazar*, No. 4:20-CV-01676, 2021 WL 2014969, at *3 (M.D. Pa. May 19, 2021) ("I join other courts . . . in concluding that the BOP's Administrative Remedy Program provides an alternative process. . . . [T]he fact that [the plaintiff] was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy." (footnotes omitted)). Finally, recognizing a *Bivens* remedy in the context alleged by Ponce poses a risk of judicial interference with prison administration, another special factor that counsels against extending a *Bivens* remedy in a new context. *See Mays*, 70 F.4th at 205–06; *Solomon v. Antonelli*, No. 5:22-CV-483-WWB-PRL, 2024 WL 3465195, at *6 (M.D. Fla. July 1, 2024). "The BOP's administrative remedy process has the added benefit of limiting judicial interference with prison

13

management while maintaining a method of redress for valid constitutional claims." *Yarclay*, 2022 WL 20701862, at *5.

Even if the Court were to conclude that Ponce's Eighth Amendment deliberate indifference claim did not arise in a new context or that special factors did not counsel against extending a *Bivens* remedy in the context alleged by Ponce, Ponce has not pleaded a plausible claim.

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to prisoners in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). To state a viable Eighth Amendment claim due to inadequate medical care, a prisoner must show that the defendant was deliberately indifferent to his serious medical needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citation omitted). This requires a two-part showing that (1) the prisoner suffered from an objectively serious medical need, and the defendant knew of the medical need but deliberately disregarded it. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference requires a mental state equal to criminal recklessness, *Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025), but this mental state can be inferred where an officer's response to a known risk is "obviously inadequate." *Barton v. Taber,* 820 F.3d 958, 965 (8th Cir. 2016) (quoting *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013)).

Ponce alleges that defendants were deliberately indifferent to his serious medical need by misdiagnosing and inadequately treating his leg injury, repeatedly denying him a wheelchair "despite his inability to bear weight, multiple falls, and recommendations from an outside medical provider[,]" delaying treatment for swelling and infection until September 2, 2025, and using threats and profanity to intimidate him from seeking necessary medical care. Docket 1 at 13, ¶ 20.

Ponce has not alleged a viable Eighth Amendment claim based on his initial encounter with defendants on July 9, 2025. Ponce alleges that his leg injury was diagnosed as a sprain and disagrees with the recommended treatment of ice, ibuprofen, and crutches. *Id.* at 10, ¶¶ 8, 9. It is well established that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Est. of Rosenberg*, 56 F.3d at 37. *See also Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (holding that negligence in diagnosis or treatment of a medical condition is not sufficient to establish a constitutional violation); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (stating that "an inmate is not entitled to any particular course of treatment").

Ponce alleges that an outside medical provider recommended a wheelchair or knee cart and contends that when he returned from the outside clinic, Dr. Moats instructed Pavel to deny Ponce's request for a wheelchair. Docket 1 at 11, ¶¶ 12, 14. "[A] prison doctor remains free to exercise his or her

independent professional judgment[.]" *Dulany*, 132 F.3d at 1240. Ponce alleges that he experienced "multiple falls" after Dr. Moats directed that Ponce be provided with crutches on July 9, when Dr. Moats initially assessed Ponce's leg injury, but Ponce does not allege any facts demonstrating that Dr. Moats was aware of any of these falls. *See generally* Docket 1. Dr. Moats, as a matter of law, cannot be deliberately indifferent to circumstances of which he is not aware. Finally, Ponce states that he was provided a wheelchair shortly after he returned from the outside provider. *Id.* at 11, ¶ 13.

While he was waiting for a wheelchair in the lobby of the medical unit, Ponce asserts that Zavadil approached him using profanity and threatened him. *Id.* These allegations are not sufficient to state a claim for deliberate indifference to a serious medical need. *See, e.g., Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 388 n.2 (W.D.N.Y. 1998) ("[H]arassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable[.]" (internal quotation omitted)).

Finally, Ponce alleges a delay in treating "swelling and infection . . . despite [his] repeated complaints of severe pain[.]" Docket 1 at 13, ¶ 20(c). But Ponce does not allege any facts demonstrating that he reported severe pain, swelling, worsening of his condition, or any signs of infection to any defendant after the outside provider instructed him to return to "FPC Yankton medical staff if [his] condition worsened or pain increased." *Id.* at 11, ¶ 14. Defendants

16

cannot be deliberately indifferent for delay in treating a condition of which they were not aware.

### 2.    Count II

For his second cause of action, Ponce alleges that Dr. Moats, Pavel and Zavadil, "acting under color of federal law, violated [his] Fifth Amendment rights by discriminating against him and providing unequal treatment compared to other similarly situated inmates at FPC Yankton." Docket 1 at 14, ¶ 24. Specifically, Ponce contends that he was denied medical accommodations, *i.e.,* a wheelchair, that were routinely provided to other inmates with comparable injuries, without any rational basis for the disparate treatment. *Id.* ¶ 25.

Ponce references *Davis v. Passman*, 442 U.S. 228 (1979) is his complaint. Docket 1 ¶ 23. In *Davis*, the Supreme Court recognized a Fifth Amendment equal protection claim is cognizable under *Bivens*, but that case involved a discrimination claim in an employment setting, not in a correctional setting. *Davis*, 442 U.S. at 230–48. Further, in *Davis*, the plaintiff alleged gender discrimination. *Id.* Here, Ponce does not allege that he was treated differently based on his gender or any other suspect or protected class. *See generally* Docket 1. He claims that he was treated differently than similarly situated prisoners and that there was no rational basis for doing so. *Id.* at 14, ¶ 25. Thus, Ponce alleges a "class-of-one" equal protection claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the

plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

The Supreme Court has never recognized a *Bivens* claim arising out of a class-of-one equal protection claim, and other courts have consistently held that such claims are meaningfully different and arise in a new context. *See, e.g.*, *Jackson-Bey v. United States Dep't of Just.*, No. 24-3193, 2025 WL 3709065, at *1 (7th Cir. Dec. 22, 2025) ("[A] class-of-one equal protection claim is markedly different from cases in which the Supreme Court has recognized a *Bivens* remedy." (citation omitted)); *Pitts v. Hill*, No. 22-CV-00055-SPM, 2023 WL 3585308, at *4 (S.D. Ill. May 22, 2023) (holding that a federal inmate's class-of-one equal protection claim is different in a meaningful way from the gender-based employment discrimination claim against a Congressman in *Davis*); *Stroud v. Warden USP Lewisburg*, No. 1:22-CV-0515, 2022 WL 17340626, at *5 (M.D. Pa. Nov. 30, 2022) (holding that there is no existing *Bivens* remedy for a class-of-one equal protection claim by a prisoner against prison officials for treating him differently than similarly situated prisoners).

Because the Court finds that Ponce's Fifth Amendment class-of-one equal protection claim is "meaningly different" than those *Bivens* claims previously recognized by the Supreme Court, the Court proceeds to the second step. In this case, the same special factors that counsel against extending *Bivens* to Ponce's Eighth Amendment deliberate indifference claim also counsel

18

against extending *Bivens* to his Fifth Amendment class-of-one equal protection claim.

## IV.   Conclusion

For the reasons discussed above, it is ORDERED:

1.   That Ponce's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.   That the Clerk of Court will send a copy of this order to the appropriate financial official at Ponce's institution.

3.   That the institution having custody of Ponce is directed that whenever the amount in Ponce's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Ponce's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1) until the $350 filing fee is paid in full

4.   That Ponce's complaint, Docket 1, is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Dated June 25, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

19